IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 18-cr-00471-WYD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DAN WELCH,

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Robert Brown, Assistant United States Attorney, and the defendant, Dan Welch, personally and by counsel, Ronald Yengich, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

### I. AGREEMENT

The plea agreement is submitted pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B).

*Defendant's Obligations:*

    A.    The defendant agrees to plead guilty to count 1 of the indictment, charging a violation of 18 U.S.C. §§ 1343, Wire Fraud.

    B.    The defendant agrees to an order of restitution of at least $1,723,538.31 for the aggregate loss suffered by WO and BN (companies noted in the factual basis below).

    C.    The defendant admits the forfeiture allegation as set forth in the indictment


COURT EXHIBIT
1

and agrees that the forfeiture described therein is not excessive.

*Government's Obligations*:

D. The government agrees to request that the defendant be sentenced within the applicable guideline range of the United States Sentencing Guidelines and that it will not submit any guideline factors not noted herein.

E. The government agrees to request that the defendant be sentenced within the applicable guideline range of the United States Sentencing Guidelines.

F. The government agrees not to pursue any additional federal charges against the defendant based on conduct known to the U.S. Attorney's Office for the District of Colorado.

## II. ELEMENTS

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

### Count 1 - Wire Fraud

*First*: the defendant devised or intended to devise a scheme to defraud or obtain money or property by means of false or fraudulent pretenses, representations or promises;

*Second*: the defendant acted with specific intent to defraud or obtain money or property by means of false pretenses, representations or promises;

*Third*: the defendant used interstate or foreign wire communications facilities, or caused another person to use interstate or foreign wire communications facilities for carrying out the scheme.

*Fourth*: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud or obtain money or property by means of false pretenses, representations or promises" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension. A "scheme to defraud" includes a scheme to deprive another of money, property or the intangible right of honest services.

An "intent to defraud or obtain money by false pretenses, representations or promises" means an intent to deceive or cheat someone.

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half-truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

§ 2.57, Tenth Cir. Pattern Jury Instructions (2011).

### III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 18 U.S.C. § 1343 is not more than 20 years imprisonment; not more than $250,000 fine, or both; not more than 3 years supervised release; $ 100 special assessment fee; plus restitution as set forth above in Part I of the plea agreement.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea. That basis is set

forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. §3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts that do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. §3553 factors, or to the Court's overall sentencing decision.

The government's evidence would show:

The defendant, Dan Welch operated a trucking company, Stillwater Trucking, LLC [Stillwater] that had been incorporated by him in Utah in 2013. A part of the business of Stillwater was to make deliveries of various products to or from various oil drilling sites in North Dakota, Montana and Wyoming operated by oil companies engaged in the extracting of oil from underground. One of those companies was a Denver-based company referred herein as WO. Stillwater operated less than five trucks which was contracted to perform services for WO. When a delivery was made the procedure followed was that a bill of lading describing the service provided was created and the amount billed for the service. The bill of lading included information relating to the type of items transported, a fee charged and the WO location involved in

4

the service. To be valid, a bill of lading required a signature of a WO employee verifying the service had been provided.

In order to facilitate the billing for deliveries, WO utilized a billing facilitating company referred to herein as BN. BN's function was to collect the bills of lading from trucking service providers it had vetted in North Dakota, Montana and Wyoming, including Stillwater, verify the documentation was properly completed and to make timely payments to the trucking service provider. BN would then submit the information collected from bills of lading and submit a periodic invoice to WO, which would then pay to BN the amount charged on the invoice. The invoice submitted to WO would include copies of all bills of lading for which the invoice applied. The invoices were mailed or sent electronically from a BN office in Chicago, Illinois to WO's headquarters office in Denver, Colorado.

Stillwater employed drivers and utilized independent contractor drivers to make deliveries on behalf of its clients in North Dakota, Montana and Wyoming. BN had an office in Williston, North Dakota. Many trucking company drivers would physically deliver bills of lading for deliveries performed for BN clients in western North Dakota and Montana to the Williston office. Stillwater's bills of lading were typically submitted to BN by Dan Welch, not by individual drivers. The defendant typically submitted Stillwater invoices to BN via email that included a scanned pdf copy of the bill of lading to a BN office in Williston, North Dakota.

Between 2013 and 2017, using the above-described procedure, Dan Welch, acting on behalf of Stillwater, submitted more than 500 bills of lading to BN for services

allegedly provided to WO drill sites in North Dakota. BN submitted to WO billings for the bills of lading submitted by and paid to Stillwater, and WO paid to BN those amounts. For the bills submitted by Dan Welch and Stillwater, WO paid BN the sum of at least $1,723.538,31 between May 2013 and April 2017.

Prior to creating and managing Stillwater, Dan Welch had been employed by a trucking company referred to herein as BCR in 2011 and 2012. He began his employ with BCR as a driver and became a manager or broker of independent contractor drivers for BCR. One of BCR's clients was WO. As the manager of drivers, one of Dan Welch's responsibilities was to collect bills of lading from the independent contractors for services performed for WO. These bills of lading were as described above and contained signature blocks for WO employees who verified the services performed for WO. These bills of lading were as described above and contained signature blocks for WO employees who verified the services performed. Dan Welch typically submitted these bills of lading to a BCR office in Chicago that would directly bill WO. Welch would do this by using computer software to scan the bills of lading into a computer and transmit a pdf version of the bill of lading to the BCR office.

In 2017, WO conducted an audit of bills submitted on behalf of Stillwater between 2013 and 2017. A review of the more than 500 bills of lading showed that approximately 90 percent of the bills of lading submitted were false. Most of the false bills of lading had WO verification signature blocks imported from BCR bills of lading previously submitted by Dan Welch when he worked for BCR. The defendant did the importation by utilizing computer software that permitted him to cut and paste images of

signature blocks on genuine bills of lading onto false bills of lading. The signature blocks were "cut" from the valid BCR bill of lading and "pasted" onto a false Stillwater bill of lading. The total loss to WO from these false billings was 1,720,392.00.

The submission of the false bills of lading to BN by the defendant in furtherance of the scheme described herein caused BN to send to WO via the United States Postal Service and via email to the WO office in Denver, Colorado invoices on a periodic basis. In or about December 2016, Dan Welch submitted to BN a false bill of lading reflecting a delivery of pipe to an oil-drilling site in North Dakota and reflecting a billing cost of $7,800.00, which invoice covered a bill of lading reflecting the delivery by Stillwater truck of pipe to a well site of WO in North Dakota. In fact, no such delivery was made. The signature block on the bill of lading submitted which purportedly verified by the delivery by a WO employee was forged and falsely completed by the defendant.

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. §3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters that are in dispute.

 A. The base guideline is § 2B1.1, with a base offense level of 7.

B. Specific Offense Characteristics:

(1) There was a loss suffered as a result of the conduct of the defendant, which the parties believe to be in excess of 1.5 million dollars but less than 3.5 million dollars. This would result in an increase of 16 levels in the offense level under § 2B1.1(b)(1)(H).

C. The adjusted offense level is 23.

D. The Defendant should receive a total reduction of 3 points for acceptance of responsibility, § 3E1.1(a). The resulting offense level is 20.

E. The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be II.

F. The career offender/criminal livelihood/armed career criminal adjustments would not apply.

G. The advisory guideline range resulting from these calculations is 37 to 46 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 33 months (bottom of Category I) to 87 months (top of Category VI).

H. Pursuant to guideline § 5E1.2, assuming the estimated offense level above, the fine range for this offense would be $ 15,000 to $ 150,000, plus applicable interest and penalties.

I. Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least 2 years but not more than 5 years.

J. The defendant owes restitution in an amount totaling approximately $1,723,538.31. The precise amount is not known pending input from the victim(s) in the case.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. §3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. §3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including

imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. §3553 factor.

## VII. ENTIRE AGREEMENT

This document states the parties" entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 4/24/19

Dan Welch
Defendant

Date: 4/24/19

Ronald Yengich
Attorney for Defendant

Date: 4/24/19

Robert Brown
Assistant U.S. Attorney

10