# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## (DENVER DIVISION)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 01 2020

JEFFREY P. COLWELL
CLERK

DAN WELCH,                        )
                                  )
            Movant,               )
                                  )
v.                                )        Crim No. 1:18-cr-00471-CMA-1
                                  )
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )

## MOTION FOR COMPASSIONATE RELEASE/REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018

COMES Movant, DAN WELCH ("Welch"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by

the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

### A.    Procedural Background

On October 10, 2018, a grand jury sitting in the United States District Court for the District of Colorado, Denver Division, returned a one (1) count Indictment charging Welch. See Doc. 1.[1] Count 1 charged Welch with Wire Fraud, in violation of 18 U.S.C. § 1343. *Id.* The Indictment also contained a Notice Forfeiture Allegation pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p). *Id.*

On April 24, 2019, a Change of Plea Hearing was held and Welch pled guilty to the Indictment, pursuant to a written Plea Agreement. See Docs. 19, 20.

On August 21, 2019, Welch was sentenced to a total term of 42 months' imprisonment, 3 years Supervised Release, Restitution of $938,726.15, and a Mandatory Special Assessment Fee of $100. See Docs. 36, 37.

---

[1] "Doc." refers to the Docket Report in the United States District Court for the District of Colorado, Denver Division in Criminal No. 1:18-cr-00471-CMA-1, which is immediately followed by the Docket Entry Number.

**B.**   **Statement of the Relevant Facts**

   1.   Offense Conduct

The parties stipulated and agreed that the government's evidence at trial would

establish the following and that all the acts described herein occurred in the state and

District of Colorado:

> The defendant, Dan Welch operated a trucking company, Stillwater
> Trucking, LLC [Stillwater] that had been incorporated by him in Utah
> in 2013. A part of the business of Stillwater was to make deliveries of
> various products to or from various oil drilling sites in North Dakota,
> Montana and Wyoming operated by oil companies engaged in the
> extracting of oil from underground. One of those companies was a
> Denver-based company referred herein as WO. Stillwater operated less
> than five trucks which was contracted to perform services for WO.
> When a delivery was made the procedure followed was that a bill of
> lading describing the service provided was created and the amount billed
> for the service. The bill of lading included information relating to the
> type of items transported, a fee charged and the WO location involved
> in the service. To be valid, a bill of lading required a signature of a WO
> employee verifying the service had been provided.

> In order to facilitate the billing for deliveries, WO utilized a billing
> facilitating company referred to herein as BN. BN's function was to
> collect the bills of lading from trucking service providers it had vetted
> in North Dakota. Montana and Wyoming, including Stillwater, verify
> the documentation was properly completed and to make timely payments
> to the trucking service provider. BN would then submit the information
> collected from bills of lading and submit a periodic invoice to WO,
> which would then pay to BN the amount charged on the invoice. The
> invoice submitted to WO would include copies of all bills of lading for
> which the invoice applied. The invoices were mailed or sent
> electronically from a BN office in Chicago, Illinois to WO's
> headquarters office in Denver, Colorado.

Stillwater employed drivers and utilized independent contractor drivers to make deliveries on behalf of its clients in North Dakota, Montana and Wyoming. BN had an office in Williston, North Dakota. Many trucking company drivers would physically deliver bills of lading for deliveries performed for BN clients in western North Dakota and Montana to the Williston office. Stillwater's bills of lading were typically submitted to BN by Dan Welch, not by individual drivers. The defendant typically submitted Stillwater invoices to BN via email that included a scanned pdf copy of the bill of lading to a BN office in Williston, North Dakota.

Between 2013 and 2017. using the above-described procedure, Dan Welch, acting on behalf of Stillwater, submitted more than 500 bills of lading to BN for services allegedly provided to WO drill sites in North Dakota. BN submitted to WO billings for the bills of lading submitted by and paid to Stillwater, and WO paid to BN those amounts. For the bill submitted by Dan Welch and Stillwater, WO paid BN the sum of at least $1,723.538.31 between May 2013 and April 2017.

Prior to creating and managing Stillwater, Dan Welch had been employed by a trucking company referred to herein as BCR in 2011 and 2012. He began his employ with BCR as a driver and became a manager or broker of independent contractor drivers for BCR. One of BCR's clients was WO. As the manager of drivers, one of Dan Welch's responsibilities was to collect bills of lading from the independent contractors for services performed for WO. These bills of lading were as described above and contained signature blocks for WO employees who verified the services performed for WO. These bills of lading were as described above and contained signature blocks for WO employees who verified the services performed. Dan Welch typically submitted these bills of lading to a BCR office in Chicago that would directly bill WO. Welch would do this by using computer software to scan the bills of lading Into a computer and transmit a pdf version of the bill of lading to the BCR office.

In 2017, WO conducted an audit of bills submitted on behalf of Stillwater between 2013 and 2017. A review of the more than 500 bills of lading showed that approximately 90 percent of the bills of lading

submitted were false. Most of the false bills of lading had WO verification signature blocks imported from BCR bills of lading previously submitted by Dan Welch when he worked for BCR. The defendant did the importation by utilizing computer software that permitted him to cut and paste images of signature blocks on genuine bills of lading onto false bills of lading. The signature blocks were "cut" from the valid BCR bill of lading and "pasted" onto a false Stillwater bill of lading. The total loss to WO from these false billings was 1,720,392.00.

The submission of the false bills of lading to BN by the defendant in furtherance of the scheme described herein caused BN to send to WO via the United States Postal Service and via email to the WO office in Denver, Colorado invoices on a periodic basis. In or about December 2016, Dan Welch submitted to BN a false bill of lading reflecting a delivery of pipe to an oil-drilling site in North Dakota and reflecting a billing cost of $7,800.00, which invoice covered a bill of lading reflecting the delivery by Stillwater truck of pipe to a well site of WO in North Dakota. In fact, no such delivery was made. The signature block on the bill of lading submitted which purportedly verified by the delivery by a WO employee was forged and falsely completed by the defendant.

See Doc. 20 at 4-7.

2.      Plea Proceeding

On April 24, 2019, a Change of Plea Hearing was held before Judge Wiley Y. Daniel. See Doc. 19. Welch entered a guilty plea as to Count 1 of the Indictment, pursuant to a written Plea Agreement. See Doc. 20. In exchange for Welch's guilty plea, the government agreed to the following: (1) request that Welch be sentenced within the applicable guideline range of the U.S. Sentencing Guidelines and that it

will not submit any guideline factors not noted in the Plea Agreement; and (2) not to pursue any additional federal charges against Welch based on conduct known to the U.S. Attorney's Office fo the District of Colorado. *Id.* at 2. The case was referred to the Probation Office for the preparation of the Presentence Report ("PSR").

3.       Presentence Report Calculations and Recommendations

On July 16, 2019, the Probation Office prepared Welch's PSR, which was revised on August 12, 2019. See Docs. 28, 34, 35. Count 1: Wire Fraud calls for a Base Offense Level of 7, pursuant to USSG § 2B1.1. Sixteen (16) levels were added because the amount of loss suffered as a result of Welch's conduct totaled to be in excess of $1.5 million but less than $3.5 million, pursuant to USSG § 2B1.1(b)(1)(I). Welch received a three (3) level reduction for acceptance of responsibility, pursuant to USSG §§ 3E1.1(a) and (b). The PSR calculated Welch's Total Offense Level to be level 20, in Criminal History Category II. Based upon a Total Offense Level of 20 and a Criminal History Category of II, the guideline imprisonment range was 37 to 46 months.

**Note:** An Addendum to Welch's PSR mentions that the Court was aware that he has a young daughter (Taia), and he was allowed to make some arrangements for her before Welch's self-surrender.

6

4.    Sentencing Proceeding

On August 21, 2019, a Sentencing Hearing was held before Judge Christine M. Arguello. See Doc. 36. At sentencing, the Court granted the government's oral motion for a 3-level decrease in offense level for acceptance of responsibility; denied Welch's Motion for Downward Departure [Doc. 32]; and sentenced Welch to be imprisoned for a term of 42 months, followed by 3 years of Supervised Release, and ordered to pay $938,726.15 in Restitution and Special Assessment Fee of $100.00. See Doc. 37. No direct appeal was filed in this case.

## III. DISCUSSION

As a preliminary matter, Welch respectfully requests that this Court be mindful that *pro se* litigants are entitled to liberal construction of their pleadings. See *U.S. v. Hernandez*, 627 F.3d 1331 (10th Cir. 2010) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976); *Haines v Kerner*, 404 U.S. 519, 520 (1972) (same).

### A.    Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)

Congress authorized compassionate release in the Sentencing Reform Act of 1984. It allows federally incarcerated people to appeal for early release if they present certain "extraordinary and compelling" reasons. Upon approval of the request, Bureau

7

of Prisons ("BOP") makes a motion to a federal judge for a sentence reduction. The Commission sets the "extraordinary and compelling" criteria, which include, but are not limited to, age and terminal illness. The program essentially allows BOP to seek the release of certain elderly and terminally ill inmates, as well as those with special family circumstances, before the end of their prison sentences rather than keep those inmates in prison when they are no longer a significant risk to the community and when they are draining away substantial and valuable BOP resources.

Congress gave the Commission the authority to determine the conditions by which an individual in federal prison could be released for "extraordinary and compelling reasons." It authorized federal courts to reduce a defendant's sentence if that individual meets the criteria set by the Commission. And Congress gave BOP the administrative task of filing motions in federal court if the defendant meets the Commission's criteria for compassionate release.

### ***Compassionate Release Under The First Step Act***

The First Step Act ("the Act") made important changes to how federal compassionate release works. It changes and expands the compassionate release eligibility criteria; ensures the prisoners have the right to appeal the BOP's denial or neglect of the  prisoner's request for a compassionate release directly to court; and provides other important features, such as notification, assistance, and visitation rules.

### *Compassionate Release Objective Criteria Under the First Step Act*

The criteria for determining whether a prisoner has an "extraordinary and compelling reason" for a sentence reduction are sometimes broader under the Sentencing Guidelines than under the BOP Program Statement. Prisoners seeking compassionate release and/or filing motions should consult USSG § 1B1.13, in addition to the BOP Program Statement 5050.50 for guidance on what reasons are considered by courts to be "extraordinary and compelling." The differences are outline below.

- **Terminal Medical Condition:**
  - o The prisoner has been diagnosed with a terminal, incurable disease with a life expectancy of 18 months; or
  - o The prisoner has a disease or condition with an end-of-life trajectory, meaning that the disease or condition will lead to death. A specific prediction of time left to live is not necessary.

- **Debilitated Medical Condition:**
  - o BOP: The prisoner has an incurable, progressive illness or has suffered a debilitating injury without hope of recovery. BOP will consider a compassionate release if the prisoner is
    - Completely disabled so they cannot carry on any self-care and is totally confined to a bed or chair; or
    - Able to do only limited self-care and is confined for 50 percent of waking hours to a bed or chair.
  - o Sentencing Commission: The prisoner's ability to provide self-care in the prison is substantially diminished and recovery is not expected because the prisoner is
    - Suffering from a serious physical or medical condition;
    - Suffering from a serious functional or cognitive impairment; or

- Experiencing deteriorating physical or mental health due to age.

- **New Law Elderly Prisoners are those sentenced for an offense that occurred after November 1, 1987, who are**
  o 70 years old or older; and
  o Have served 30 years of the sentence.

- **Elderly Prisoners (with Medical Conditions)**
  o BOP
    - 65 years old or older;
    - Suffer from chronic or serious medical condition related to age;
    - Are experiencing deteriorating physical or mental health that substantially diminishes their ability to function in prison;
    - Conventional treatment promises no substantial improvement; and
    - Have served at least 50 percent of their sentence.
  o Sentencing Commission
    - 65 years old;
    - Are experiencing serious physical or mental health deterioration due to age; and
    - Have served at least the lesser of 10 years or 75 percent of their sentence.

- **Other Elderly Prisoners (BOP only)**
  o 65 years old or older; and
  o Have served the greater of 10 years of 75 percent of their sentence.

- **Family Circumstances**
  o Death or incapacitation of the family member or caregiver of the prisoner's minor children (BOP adds that to be eligible, the prisoner must be the only family member capable of caring for the children); or
  o Incapacitation of the prisoner's spouse or registered partner

10

- BOP: "Incapacitation" means the spouse or partner has
  - Suffered a serious injury or debilitating illness and is completely disabled so as to be unable to carry on any selfcare and is totally confined to a bed or chair; or
  - Has severe cognitive defect such as Alzheimer's.
- BOP: The prisoner must be the only available family caregiver.

### *Requests Based on Non-medical Circumstances – Absence of a Family Caregiver*

The criteria for a Reduction in Sentence ("RIS") request may include the death or incapacitation of the family member caregiver of an inmate's child, e.g., RIS requests from inmates whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation.

For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child.

In reviewing these requests, BOP should assess, based on the information provided, whether release of the inmate to care for the inmate's child is in the best interest of the child.

### *The First Step Act Gives Prisoners the Right to Go to Court*

The most significant change to compassionate release is that the Act provides prisoners the power to file a motion for compassionate release if they can demonstrate they have tried and failed to convince the BOP to do so for them. Before passage of the First Step Act a denial by the BOP was not appealable.

**Prisoners now have the right to file a motion** under 18 U.S.C. § 3582(c)(1)(A)(i) directly with the court under certain circumstances:

- Prisoners may file a motion after the earlier of
    o having "fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion. . ." or
    o 30 days after the date the warden received a request for compassionate release from the prisoner.

- A prisoner **exhausts administrative rights** when one of two things happens:
    o The Central Office of the BOP rejects a warden's recommendation that the BOP file a compassionate release motion, or
    o The warden refuses to recommend the BOP file a compassionate release motion and the prisoner appeals the denial using the BOP's Administrative Remedy Program.

### *Welch is Eligible for a Reduced Sentence*

In this case, Welch had been taking care of his youngest daughter, Taia (15), until his incarceration. Taia's mother moved away from her in 2014. Hence, Taia has been living with Welch for over six (6) years, never once did she stay with her mother

as their relationship has been very rocky and troubling. Taia had seen her mother over those years, but even a short visit ended most of the time with Taia in tears or some kind of incident.

Since Welch's imprisonment, Taia had been staying with her older sister, Jordan, who took good care of her. However, when the COVID-19 hit, Jordan was worried about her two (2) young children, ages 4 and 1, getting infected and decided it would be best for Taia to try living with her mother. Since then, after a very short period of time, Taia's mother dropped her off back at Jordan's and told her "if she did not get out," she would call the cops. Taia has since moved in with her other sister, Christin and Christin's husband and 1 year old son.

Taia is not her sisters' responsibility. She should be under her parent's care– which in this case, is not her mother. Welch is concerned that Taia may end up in foster care, especially with the COVID-19 pandemic going on. Hence, it is necessary for Welch to be with his daughter during this trying times. He needs to provide for his daughter financially and guide her emotionally, intellectually and spiritually to make sure she achieve success toward life and future endeavors.

**Fact:** Taia is a great and smart kid– she has a 4.0 grade average. She has been in her student government at school, played the highest level of Soccer on club teams and school, is a Karate black belt holder, and currently works at In-N-Out Burger.

Because of the urgency imposed by such unforseen event – global pandemic COVID-19 and incapable mother, it is important that the sentencing court decides instantaneously whether to reduce the sentence after considering the factors in section 3553(a) and if it finds that "extraordinary and compelling reasons" warrant a reduction.

Welch, currently housed at the Federal Prison Camp, Florence, Colorado ("FPC Florence"). Welch's criminal history was over-represented, placing him in Criminal History Category II at sentencing. Further, Welch has no arrests or convictions for crimes of violence, nor does he have any arrests involving drugs or alcohol. Accordingly, Welch is not a threat to society. Because of the relatively limited risk of recidivism and the relatively limited potential danger to the community of his release, he was sentenced to 42 months' imprisonment, and his projected release is on September 3, 2022. Also, the Court's imposed sentence overrepresented Welch's offense– his offense level was enhanced by 16 levels based on the assumed loss value suffered of $1,723,538.31. When in fact, the Declaration of Victim Losses from Whiting Petroleum Corporation is requesting $938,726.15 restitution. The victim noted the company was compensated in the amount of $1,350,000 pursuant to a civil settlement. See Exhibit 1.

14

Since his incarceration in FPC Florence, Welch has no disciplinary infractions at all and has done all the programming possible. He also had jobs prior to his incarceration and is well capable of working to support and provide for Taia. In fact, if granted compassionate release, Welch has a job waiting for him. See Exhibit 2.

It is imperative that Welch cares for Taia as nothing compares to the love and protection provided by parent(s). See also Exhibit 3. It would not be beneficial for the children to be placed under the case of Child Protective Services ("CPS").

**Note:** Most kids are better off when left in their natural family homes. If you care about children, if you want them to have good lives and turn out to be happy, productive citizens, don't take them away from non-abusive parents. See Kids Gain More From Family Than Foster Care – from the MIT News Office; Study: Troubled homes better than foster care – by Wendy Koch, for USA Today.

No aspect of Welch's offense involved violence. He has zero (0) custody points and his pattern score is Minimum. Also, it is essential to note that Welch was accepted to the Working with Animals to Gain Socialization (WAGS) program as a trainer for the service animals. WAGS is the highest program that the BOP offers, which requires an inmate to be of good standing and recommended for the program. Hence, Welch qualifies under the limited circumstances that authorize such a motion, and because of the relatively limited risk of recidivism and the relatively limited potential danger to the community of his release.

# IV. CONCLUSION

For the above and foregoing reasons, Welch prays this Court would consider

his Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C.

§ 3582(c)(1)(A) and the First Step Act of 2018, based upon the "extraordinary and

compelling reasons" of absence a family caregiver.

Respectfully submitted,

Dated: September 27, 2020.

DAN WELCH
REG. NO. 45012-013
FCI FLORENCE
FEDERAL CORR. INSTITUTION
P.O. BOX 6000
FLORENCE, CO  81226
Appearing *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2020, a true and correct copy of the above and foregoing Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U. S. Mail, postage prepaid, Robert M. Brown, Assistant U.S. Attorney at U.S. Attorney's Office-Denver, 1801 California Street, Suite 1600, Denver, CO 80202.

DAN WELCH

# **EXHIBIT 1:**
- **Declaration of Victim Losses**
- **Addendum to the Presentence Report**

# United States District Court For The District of Colorado - Denver

## Declaration of Victim Losses

|                      |     |              |
|----------------------|-----|--------------|
| United States        | )   |              |
|                      | )   |              |
| v.                   | )   | 18-CR-00471  |
|                      | )   |              |
| DAN WELCH            | )   |              |
|                      | )   |              |

Whiting Petroleum Corporation, located at 1700 Broadway, in the city (or county of) Denver, in the state of CO, 80290, is a victim in the above referenced case and we believe that we are entitled to restitution in the total amount of $ 938,726.15 .

Whiting Petroleum Corporation's specific losses as a result of this offense are summarized as follows: *(attach additional pages if needed)*

　 See attached spreadsheet.

Whiting Petroleum Corporation has been compensated by insurance or another source with respect to all of a portion of our losses in the amount of $1,350,000.00. The name and address of our insurance company and the claim number are as follows:

　 Whiting was compensated for a portion of its losses in the amount of $1,350,000 00 pursuant to a civil settlement.

As a result of this offense, Whiting Petroleum Corporation has: *(check all that apply)*
[ ] become insolvent;
[ ] filed for bankruptcy under the Bankruptcy Code (title 11, United States Code);
[ ] suffered substantial loss of a retirement, education, or other savings or investment fund;
[ ] made substantial changes to my employment (such as postponing retirement plans);
[ ] made substantial changes to my living arrangements (such as relocating to a less expensive home);
[ ] suffered substantial harm to my ability to obtain credit.

Whiting Petroleum Corporation declares under penalty of perjury the foregoing is true and correct.

　　　　　　　　　　　　　　　　　　　　　　　*Thomas A Ashby*
　　　　　　　　　　　　　　　　　　　　　　　(Signature)

Executed on __18th__ day of __July_____, __2019__ .

*(Additional Pages May Be Attached)*

| Description | Amount |
|---|---|
| Trucking Services - Fraudulent Invoices: | |
| BNSF Logistics | $ (1,895,072.30) |
| BTJ Energy Services | $ (96,042.50) |
| TOTAL | $ (1,991,114.80) |

| | |
|---|---|
| Settlement Amount | 1,350,000.00 |
| Payable Amount Withheld | 125,480.30 |
| Legal Fees & Related Expenses | (423,091.65) |
| NET SETTLEMENT AMOUNT: | $ 1,052,388.65 |

| | |
|---|---|
| NET LOSS, POST-SETTLEMENT: | $ (938,726.15) |

## ADDENDUM TO THE PRESENTENCE REPORT

### UNITED STATES DISTRICT COURT FOR DISTRICT OF COLORADO
### UNITED STATES VS. DAN  WELCH
### DOCKET NUMBER: 1082 1:18CR00471-1

At sentencing, the Court must—for any disputed portion of the Presentence Report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the Court will not consider the matter in sentencing.  Fed. R. Crim. P. 32 (i)(3)(B).

### OBJECTIONS BY THE GOVERNMENT

As of August 12, 2019, the Probation Office has not been advised of any objections by the Government.

On July 31, 2019, the Government file **Document 31**, Government's Sentencing Statement and Position Relative Tt 18 U.S.C. § 3143(a).  The Government submits self-surrender would be appropriate in this case.

### OBJECTIONS BY THE DEFENDANT

On July 30, 2019, the defendant, through defense counsel, filed **Document 30**, Position of Defendant With Respect to the Presentence Report.  The defendant advises he has no objections to the report.

On August 7, 2019, the defendant, through defense counsel, filed **Document 32**, Motion for Variance and Downward Departure.  In the motion, the defendant requests a downward departure pursuant to §4A1.3(b) because he believes his Criminal History Category II substantially overrepresents the seriousness of his criminal history.  Additionally, the defendant is requesting a downward variance based on his parental responsibilities.  The defendant is requesting a sentence of probation which would include a period of home confinement and community service.

Government's Response:  On August 9, 2019, the Government filed **Document 33**, Government's Response to Motion for Variance and Downward Departure [ECF 32].  The Government submits its belief that the defendant's prior convictions warrant that he remains in Criminal History Category II.  Further, the Government submits a downward variance to probation "would unduly minimize the serious nature of the offense committed primarily grounded on the size of the loss to the victim."  The Government notes if a term of incarceration is imposed, the Court could order a longer time for the defendant to voluntary surrender to the Bureau of Prisons to provide him time to make arrangements for his daughter.

Probation's Response:  The Probation Office does not believe Criminal History Category II overrepresents the seriousness of the defendant's criminal history.  Additionally, the Probation Office does not believe a downward variance is warranted in this case.  The Probation Office continues to recommend a sentence of 42 months incarceration for reasons noted in the Justification section of the presentence investigation report.

**ADDITIONS/CORRECTIONS**

On July 31, 2019, the United States Probation Office for the District of Utah completed a home inspection at the defendant's residence.  This information was added to Paragraph 58 of the presence investigation report.

The Probation Office has received documentation from Brigham Young University, Lehi High School, the University of Phoenix, and Landesk Software.  Paragraphs 68 and 69 of the Presentence Investigation Report have been revised to include this information.

The facesheet of the Presentence Investigation Report has been revised to show the new time of the sentencing hearing.

Attached is a Declaration of Victim Losses from Whiting Petroleum Corporation.  The victim is requesting $938,726.15 restitution.  Paragraphs 20 and 91 of the Presentence Investigation Report and the Restitution section of the Sentencing Recommendation have been revised to show the lesser amount of restitution being requested by the victim.  The victim noted the company was compensated in the amount of $1,350,000 pursuant to a civil settlement.

Attached are letters in support of the defendant.

Respectfully submitted,

*s/Gary R. Kruck*

GARY R. KRUCK
SENIOR UNITED STATES PROBATION OFFICER

Approved:

*s/Justine L. Kozak*

JUSTINE L. KOZAK
SUPERVISING UNITED STATES PROBATION OFFICER

**<u>EXHIBIT 2:</u>**
**"Job Offer"**



Aspire Lease and Factor
949- 478-2670
www.AspireLeaseAndFactor.com

Re: Dan Welch 45012-013

To Whom It May Concern:

We are hopeful that accommodations can be made for the early release of Dan Welch. We hold Dan in high regard and have employment available for him upon his return.

We believe that stable employment is important for Dan's transition back to the community. We are familiar with Dan's skills and talents. It is our pleasure to hold a position available for Dan in our fleet management department. We look forward to his safe and expeditious return.

Please don't hesitate to contact me with any questions. We look forward to supporting Dan.

Best Regards,

*Eric Richardson*

*VP Sales/Operations*

*Aspire Lease and Factor LLC*

ericr@aspireleaseandfactor.com

*tel. 801.935.5506*

## **EXHIBIT 3:**
**"Reference Letters"**

August 4, 2019

Judge Cristine M Arguello
US District Court
Colorado, USA

Dear Honorable Judge Arguello,

I am honored that Dan Welch would confide in me in asking that I write a letter of reference to the court. I have known Dan intimately for 5 years and we have had a longer acquaintance prior. I served as an LDS Bishop for Dan and his family and currently live across the street from Dan. I consider Dan a dear friend and brother.

I wish the court to know that Dan is a very good man. Dan has a very kind heart, and his nature is such that he is always looking beyond himself. He has helped many families in our neighborhood. Those that live in our neighborhood have benefited from Dan's goodness and kindness.

I have appreciated Dan, both as a neighbor and congregationalist, for his forthright nature, service, and willingness to take responsibility for his actions. As Dan outlined the proceedings from the last year, I feel he has been very forthcoming about his business transactions with investigators because that is the type of person Dan is. I know that Dan is remorseful for his actions and circumstances and will never hide from making things right.

As consideration is made for Dan's sentencing I hope the court considers the welfare of Dan's 15 year old daughter, Taia. Dan is an amazing and invested father. For the past 5 years, Dan has been the primary caretaker of Tala. He is the primary provider for her physical, emotional, spiritual, and mental well being. He is invested in her schooling, extracurricular activities and his life completely centers around Taia when he is home. I am concerned for Taia's well-being if Dan goes to prison and I hope that the court will consider her welfare as decisions are made.

Thank you for considering the thoughts expressed here. I know that Dan will want to make things right and I hope that a balance is struck with justice and mercy as consideration is made for both Dan and his daughter, Taia.

Kindest regards,

Paul R. Lewis
10346 N Sandalwood Dr.
Cedar Hills, UT  84062
paullewisut@gmail.com
801-830-8735

To whoever it may concern,

I don't really know how to write this letter or even where to start, but my dad is a great man. He has been there for me my whole life, and through the hardest times he would comfort me and tell me it would all be okay. He has been my best friend, my milk shake buddy, and my jam session partner. He has made me the person I am today. Without him I wouldn't be an overachieving student, and I most definitely wouldn't have the confidence and drive I have to do my best. After my parents divorce he was there to talk to when I was sad. He helped me build a good relationship with my mother. For as long as I can remember it has been me and him. A single dad with a young child that he needed to care for. I've lived with him full time without any breaks for more than half my life. He always made sure I had every little thing I wanted. He was my biggest cheerleader with everything I did, whether it was soccer or cheer or dance he was always there. He is the best dad anyone could ever ask for. To give you an idea of the kind of person he raised me to be I could tell you that I'm a 4.0 student, and I take all honors classes. I could tell you that he has raised me to be a leader as I served on student council last year and on my local youth city council as a secretary. I could tell you that he has taught me to be involved and make good friends as I played a high level of competitive soccer. I could tell you that he has taught me to have a big heart and to care for people and always be kind. My father has had more trials in his life than anyone else I know. He has been through 3 failed marriages, lots of career changes, and now this. But even after all of this adversity he has remained the same caring person that will pull over on the side of the road to help a stranger fix their tire. He gives me the best friendship advice, and supports my decisions. So to whoever is reading this letter, please do everything in your power to help me keep my best friend, because I need him in my life. I need him to be there to send me to my first date, and approve of the boy I like. I need him to be able to send me to my first high school dance. I need him to be there when I can't figure out a math problem. I need him to calm me down when I get anxiety about school. I need him to cheer me up when I get sad. I need him to be there to talk about every little thing that happened at school on our drive home. I need him to be there at my graduation. I need him to be able to do the things every other dad can do. I need him in my life. So please I am begging you don't take him away from me. I get that he made a mistake, but everyone makes mistakes its what makes us human. He's not a danger to anyone, so locking him up isn't going to do anything except ruin his life and tremendously affect mine. Because if you lock him up I wouldn't be able to attend the High School I am enrolled in. I wouldn't be able to stay close to my friends. I would have to move far away and live with my mother and go to a complete new school in a place I'm not even familiar with, a place that's not my home. But you wouldn't only be affecting my life. You would affect my brothers, sisters, nieces, nephews, and even my dog. So please when you're making your decision, or playing your part in this process, please consider not only me but all of them too.

DAN WELCH
REG. NO. 45012-013
FCI FLORENCE
FEDERAL CORR. INSTITUTION
P.O. BOX 6000
FLORENCE, CO 81226

September 27, 2020

Mr. Jeffrey P. Colwell Esq.
Clerk of Court
U. S. District Court
District of Colorado
901 19th Street, 2nd Floor
Denver, CO 80294

RE:   *Welch v. United States*
      Crim No. 1:18-cr-00471-CMA-1

Dear Mr. Colwell:

Enclosed please find and accept for filing Movant's Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. Please submit this document to the Court.

Thank you for your assistance in this matter.

Sincerely,

DAN WELCH
Appearing *Pro Se*

*Encl. as noted*

Dear Mr Colwell:
Please note on August 21, 2020 I submitted a compassionate
release request to my Case Mgr, Mr Wyche, through his office
to the Warden, C. Carter. Since it has been more than 30 days
and I have not received an answer, I am per the First Step Act
now filing this motion with the court

Thank You,

Dan Welch
September 27, 2020



Dan Weber 45012-013
FPC Florence
P.O. Box 6000
Florence, Co 81226

Mr. Jeffrey P. Colwell Esq.
Clerk of Court
US. District Court
District of Colorado
901 19th Street, 2nd Floor
Denver, Co 80294