IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 18-CR-00471-CMA-1

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DAN WELCH,

        Defendant

---

**SUPPLEMENT TO MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

---

      Mr. Welch, through counsel, respectfully submits this supplement to his motion for compassionate release/reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) filed October 1, 2020 (Doc. 42), and moves this Court to convert the remainder of his sentence of imprisonment to time served with home confinement added as a condition of supervised release. This motion should be granted due to the incapacitation of the mother of Mr. Welch's child and unavailability of other adequate caregivers, which constitutes extraordinary and compelling grounds warranting compassionate release. Further, Mr. Welch is not a danger to the community, and respect for the law, general deterrence and other notable Section 3553(a) factors would not be undermined by converting the remainder of his sentence to time served with home confinement as an added condition supervised release.

I.    BACKGROUND

On August 21, 2019, Mr. Welch was sentenced to 42 months imprisonment followed by three years of supervised release after pleading guilty to one count of Wire Fraud in violation of 18 U.S.C. § 1343. Currently, he is imprisoned at FCI Florence with a projected release date of September 3, 2022.[1] Accordingly, he has served approximately 38% of his original sentence. The factual and procedural background of Mr. Welch's case is adequately summarized in his first motion for compassionate release and in the Presentence Investigation Report (PSR). *See* ECF Doc. 42, p. 2-7; *see also* PSR at p. 3-5.

On October 1, 2020, Mr. Welch moved this Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) after exhausting his administrative remedies.[2] In his motion, Mr. Welch provided the Court with information about his daughter Taia Welch, age 16, who is faced with homelessness and lack of adult care and supervision due to the incapacitation of her mother Kristi Smith and unavailability of other adequate caregivers. Prior to his imprisonment, Mr. Welch was Taia's sole caregiver. His history as a predominantly single father to Taia was well-documented in the PSR. *See* PSR at p. 6-7, 12, A-1. Since her father's imprisonment, Taia has moved between three family members' homes, including Ms. Smith's. Ms. Smith is incapacitated due to her severe drug and alcohol addiction. As a result, Taia does not feel safe in her care or at her home. Recently, Taia was asked to leave her sister's residence due to the family's

---

[1] Per BOP Inmate Locator: https://www.bop.gov/inmateloc/
[2] On August 21, 2020, Mr. Welch filed a request with FCI Florence C. Carter for compassionate release. As of September 27, 2020, Mr. Welch had not received a response to his request. (ECF. Doc. 42, p. 28).

concerns about exposure to the novel coronavirus (COVID-19). Taia has no other family members with whom she can reside. Mr. Welch moves the court for compassionate release so he may return home and resume his role as Taia's sole caregiver.

While the facts underlying Mr. Welch's conviction were serious, he has served a substantial term of imprisonment that has been "harsher and more punitive" than could have been anticipated by the court at the time of sentencing due to BOP lockdowns and restrictions related to COVID-19. *See United States v. Rodriguez*, No. 00-cr-761-2, 2020 WL 5810161 at *3 (S.D.N.Y. September 30, 2020) (finding federal prisons, as prime candidates for the spread of the virus had to impose onerous lockdowns and restrictions that made the incarceration of prisoners far harsher than normal).

Mr. Welch's continued incarceration may result in his daughter's homelessness or transfer of custody to the state, either of which would be a cataclysmic result for a high-achieving child with a close father-daughter bond.[3] Mr. Welch has an unremarkable and non-violent criminal history outside of the conviction in this case, which was non-violent. He has not sustained any disciplinary infractions since being placed in custody. He has an adequate release plan, is not a danger to others, and can be appropriately supervised in the community. It is on this basis that he moves this Court for immediate compassionate release.

## II.   DISCUSSION

### a.   Legal Standard for Compassionate Release

---

[3] *See* ECF Doc. 42, p. 26 of 29, Letter from Taia Welch submitted to the court at the time of sentencing; *see also* attached **Exhibit A**, Affidavit from Taia Welch dated October 13, 2020, requesting her father's release to be reinstated as her caregiver.

As amended by the First Step Act, 18 U.S.C. § 3582 authorizes sentencing courts to reduce a term of imprisonment if, after considering the applicable factors set forth in section 3553(a), it concludes that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Guidelines (U.S.S.G.) § 1B1.13 and Commentary instructs, in relevant part, that a court may reduce a term of imprisonment if the court determines that:

1) "[e]xtraordinary and compelling reasons warrant the reduction;"

2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and

3) "[t]he reduction is consistent with this policy statement."

U.S.S.G. § 1B1.13

Further, U.S.S.G. § 1B1.13. provides four categories of extraordinary and compelling grounds that would warrant compassionate release: "(A) Medical Condition of the Defendant," "(B) Age of the Defendant," "(C) Family Circumstances," and "(D) Other Reasons." U.S.S.G. § 1B1.13, cmt. n.1.

As relevant to Mr. Welch's case, the Sentencing Commission's application notes provide that "extraordinary and compelling reasons" for a sentence reduction based on "family circumstances" may exist due to: "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only

available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C); *see also United States v. Brown*, No. 3:18-cr-29-DCB-LRA, 2020 WL 3440941 (S.D. Mississippi June 23, 2020) (collecting cases where family circumstances asserted as grounds for requesting compassionate release). The application notes define "Other Reasons" as "determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).

Because the First Step Act was enacted as recently as December 2018, there is sparse case law addressing the standards a court should employ when reviewing an inmate's request for compassionate release due to "family circumstances." For that reason, courts have looked to a Program Statement issued by the Bureau of Prisons (BOP) in January 2019 for guidance in reviewing requests based on the incapacitation of a spouse and/or the incapacitation of the family member caregiver of a minor child. *See, e.g., United States v. Bolden*, No. CR16-320-RSM, 2020 WL 4286820 (W.D. Wa. July 27, 2020) (referring to the Program Statement to define incapacitation); *see also United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well"); *United States v. Strain*, No. 3:97-CR-00004-TMB, 2020 WL 1977114, at *4, n.49 (D. Alaska Apr. 24, 2020); *United States v. Gutierrez*, 2019 WL 2422601, at *3 (D.N.M. June 10, 2019).

5

Concerning requests based on incapacitation of the caregiver to a defendant's minor child, the Program Statement defines "incapacitation" as "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Statement § 5050.50 at p. 7.[4] The guidance states that information and documentation should be provided showing the incapacitation of the caregiver, that the caregiver is the only family member capable of caring for the child, verifiable documentation that the inmate is the parent of the child, verifiable documentation providing name and age of the child, and a release plan. *Id.* at p. 7-8.

b. Exhaustion of Administrative Remedies

Before filing a compassionate release motion in federal court, a prisoner must exhaust his or her administrative remedies in one of two ways:

(1) Prisoner may file a motion with the court after fully exhausting all administrative rights to appeal the Bureau of Prison's decision not to file a motion for compassionate release, or

(2) Prisoner may file a motion with the court after requesting release and there has been "the lapse of 30 days from the receipt of such request by the warden of the defendant's facility ..."

18 U.S.C. § 3582(c)(1)(A).

---

[4] Located at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

The statute does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise. *See United States v. Koons*, No. CR 16-214-05, 2020 WL 1940570, at *3 (W.D. La. Apr. 21, 2020).

On August 21, 2020, Mr. Welch filed a request for compassionate release with Warden C. Carter of FCI Florence. To date, Mr. Welch has not received an answer to his request. Because more than 30 days have passed since the request was made, the court has jurisdiction to rule on this motion pursuant to 18 U.S.C. § 3582(c)(1)(A).

          c.      Extraordinary and Compelling Circumstances

Mr. Welch's request for immediate compassionate release is based on his need to resume his responsibilities as sole caregiver for his minor daughter as a result of the incapacitation of her mother and the unavailability of other family members to care for her during the unprecedented COVID-19 pandemic.

Taia Welch, Mr. Welch's daughter, is 16 years old. **Exhibit A**, Affidavit of Taia Welch, at ¶ 1. She is a high-achieving student and competitive athlete. ECF Doc. 42, p. 26. Prior to Mr. Welch's imprisonment, Taia resided with him full-time and he supported her emotionally and financially. *Id*. at 25-26. Taia described her father as "the only consistent parent I have had in my life." **Exhibit A** at ¶ 3. Before Mr. Welch remanded to BOP custody in August 2019, he arranged for Taia to live with her older sister Jordan Aula'i. *Id*. at ¶ 6. Taia resided with Ms. Aula'i and her family until the onset of the COVID-19 pandemic, at which time Ms. Aula'I asked her to leave in order to avoid the risk for exposure she posed given her school and work obligations. **Exhibit B**, Affidavit

7

of Jordan Aula'i, at ¶ 3. Ms. Aula'i remains concerned about Taia's risk for exposure to COVID-19 and for that reason will not allow Taia to return to her home. *Id*. at ¶ 11.

After being asked to leave her sister's home, Taia went to live with her mother Kristi Smith for approximately six weeks. **Exhibit A** at ¶ 8; *see also* **Exhibit B** at ¶ 4. Ms. Smith is universally described as unstable, abusive, and plagued with severe alcohol and drug addiction. **Exhibit A** at ¶ 4, 10; **Exhibit B** at ¶ 6-8; *see also* **Exhibit C**, Affidavit of Christin Larson, at ¶ 4-5. Concerning the time she spent with Ms. Smith, Taia reported:

> "I often slept in my car and with friends due to my mother's instability. Her addictions have made her unable to care for me entirely. I became depressed and suicidal while residing with her. While I was living with my mother, my mother repeatedly told me to "get out or I'll call the police" about once a week. My mother is rarely sober. I have videos of my mother intoxicated and verbally abusing and threatening me. I am willing to share those videos."

**Exhibit A** at ¶ 9-10.

After leaving her mother's home, Taia resided with her other sister Christin Larson. *Id*. at ¶ 12. Ms. Larson has a son who suffers from asthma. *Id*. at 12; see also **Exhibit C** at ¶ 15. Ms. Larson felt safe having Taia reside with her over the summer but is uncomfortable now that Taia is once again working and going to school. *Id*. at ¶ 11-16. As a result, she has asked Taia to find alternative living arrangements. *Id*. at ¶ 17. Taia reports that she has no where else to go. **Exhibit A** at ¶ 15. She requests her father's return home so she has "a stable place to live." *Id*.

Mr. Welch is the only available caregiver for Taia Welch, a minor, which is an "extraordinary and compelling" reason warranting compassionate release. *See United*

*States v. Bucci*, 409 F.Supp.3d 1 (D. Mass. September 16, 2019) (granting compassionate release where defendant was the "only available caregiver" for his ailing mother). Taia's only other legal guardian, her mother Kristi Smith, is unable to care for her due to severe drug and alcohol addiction and therefore "incapacitated." *See United States v. Nazer*, No. 18-cr-00783-2, 2020 WL 2197840 * (N.D. Illinois May 6, 2020) (denying compassionate release where minor child's mother's work obligations made it difficult for her to provide in-home schooling during COVID-19 pandemic and defining incapacitated as "to deprive of ability, qualification, or strength; make incapable or unfit; to disable… to deprive of the legal power to act in a specified way or ways.). While other family members have attempted to provide accommodations for Taia, they have revoked that offer based on concerns related to the risks associated with COVID-19. The standard for granting compassionate release based on "family circumstances" involving the incapacitation of minor child's caregiver does not require a showing that no other caregiver is available. The fact that circumstance exists here serves only to exacerbate the "extraordinary and compelling" grounds for Mr. Welch's request.

Furthermore, the Court is free to find that extraordinary and compelling reasons exist, even if the defendant does not fit any § 1B1.13 category. *See United States v. Redd*, No. 1:97-cr-00006, 2020 WL 1248493, at 6-7 (E.D. Va. March 16, 2020) (finding that "Congress' dramatic reduction under the First Step Act of the penalties he received on his three 'stacked' § 924(c) convictions" was an extraordinary and compelling reason to justify relief). Nevertheless, that Mr. Welch is the only available caregiver for his

minor daughter due to the incapacitation of her mother coupled with the unprecedented COVID-19 pandemic, which renders other family members unavailable to care for her, serves as an extraordinary and compelling reason to justify the requested relief.

d. Analysis of 18 U.S.C. § 3553(a) Factors

A court must consider the 18 U.S.C. § 3553(a) sentencing factors to the extent they are applicable in reducing any sentence, and any reduction of a sentence that a court orders must also be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). Post-sentencing conduct is relevant to this analysis. *See Pepper v. United States*, 562 U.S. 476 (2011).

The nature of Mr. Welch's offense is summarized in the PSR and his first motion for compassionate release. While undeniably serious, the type of conduct in which he engaged can be effectively mitigated in the community in the future by monitoring his professional activities while on supervised release. It is worth noting that Mr. Welch accepted responsibility for his offense and entered a guilty plea timely. *See* PSR at pgs. 3, 8.

Consideration of other § 3553(a) factors, "to the extent that they are applicable," weigh in favor of granting Mr. Welch compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). First, at 57 years old, Mr. Welch's criminal history is not unblemished; yet, his compliance with all conditions set forth by this court, acceptance of responsibility for his offense, loss of reputation and business relationships, and lack of disciplinary infractions while in-custody suggest he is amenable to court orders and

rehabilitation efforts. *See* 18 U.S.C.§ 3553(a)(l). There is little likelihood that he will commit another crime, especially if he will be subject to home confinement, GPS monitoring, and other terms of supervised release. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). Granting Mr. Welch compassionate release based on the unique family circumstances presented here would not send a message that white-collar crime pays, merely that the crime committed in this case does not warrant the abandonment of a 16 year old child, which is the risk should Mr. Welch remain incarcerated and unable to resume his role as sole caretaker of his daughter. *See* 18 U.S.C.§ 3553(a)(2)(B). Mr. Welch has faced and continues to face serious consequences, including more than one year of incarceration, substantial financial consequences, civil penalties and loss of reputation, business relationships and friendships, all because of his conduct in this case.

The § 3553(a)(2)(A) factor concerning "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" is largely mitigated by the amount of time he's spent in custody and the more onerous confinement conditions in place as a result of strict restrictions stemming from the COVID-19 pandemic. *See Rodriguez*, 2020 WL 5810161 at *3; see also *United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (finding incarceration during an outbreak of COVID-19 inside the BOP facility sufficiently increased the severity of the sentence beyond what was originally anticipated).[5] Resentencing Mr. Welch to serve the remainder of his prison sentence on

---

[5] Currently, FCI Florence houses three inmates and one staff member with active positive tests for COVID-19.

home confinement or on an extended period of supervised release, with GPS monitoring and other relevant conditions, would provide him with a punishment that is "sufficient, but not greater than necessary" given that his daughter is otherwise without a home, financial support, and caretaker.

                e.        Mr. Welch is Not a Danger to Others or the Community

Mr. Welch's compassionate release from prison would not "pose a danger to the safety of any other person or the community." *See* BOP Program Statement 5050.50, at 2. While not entirely unblemished, Mr. Welch's criminal history is limited. *See* PSR p. 9. He was compliant throughout the pendency of the criminal case, accepted responsibility for his offense, cooperated with the probation department throughout the presentence investigation process, and has sustained no disciplinary infractions while in-custody. *See* PSR, p. 3, 7-8. All of these factors illustrate his willingness to comply with orders of this Court and suggest he would continue to do the same while on supervised release. While his offense was certainly serious, it was non-violent. There is no evidence that Mr. Welch is a danger to the public now or in the future. Certainly, as described above, he can be adequately supervised in the community.

Finally, Mr. Welch has a suitable release plan that would promote public safety while allowing him to resume his position as Taia's caregiver as quickly as possible. Jordan Alau'i and Christin Larson have confirmed that either would be willing to temporarily provide housing for Mr. Welch immediately upon his release, including any

---

Another 23 inmates and 5 staff members have tested positive and recovered. Per https://www.bop.gov/coronavirus/ (last checked October 13, 2020).

period of isolation if deemed necessary. Mr. Welch's daughters would likewise be able to provide modest financial assistance to help him get a deposit together and rent an apartment for Taia and he to reside in. He has communicated with several potential employers and is confident that he will be able to obtain employment quickly. Mr. Welch estimates that he can establish a residence for Taia and himself within 1 to 2 weeks.

### III.  CONCLUSION

For these reasons, Mr. Welch respectfully requests that this Court grant his immediate compassionate release or, in the alternative, schedule a hearing in which the Court can explore and question any unresolved concerns related to this request.

Respectfully Submitted,

s/Thomas R. Ward
Thomas R. Ward
Attorney for Defendant
McDermott Stuart & Ward LLP
140 E. 19th Ave., Suite 300
Denver, CO 80203
Tel. 303-832-8888
Fax 303-863-8888
tward@mswdenver.com

Dated:  October 13, 2020

CERTIFICATE OF SERVICE

       I hereby certify that on March 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/Thomas R. Ward
Thomas R. Ward